UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS RUSSO, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF FINANCE, COMMISSIONER JACQUES JIHA, CHIEF INFORMATION OFFICER EUSEBIO FORMOSO, and JOHN/JANE DOES #1-10, <br><br> Defendants. | Case No._____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Louis Russo, by his attorneys, brings this class action against the City of New York ("NYC"), New York City Department of Finance ("DOF"), Commissioner Jacques Jiha ("Commissioner" or "Jiha"), Chief Information Officer Eusebio Formoso ("CIO" or "Formoso"), and John/Jane Does #1-10, on his own behalf and on behalf of all others similarly situated, and alleges, with personal knowledge as to his own actions and upon information and belief as to the actions of others, as follows:

### I.   INTRODUCTION

1.  Plaintiff brings this class action seeking declaratory and injunctive relief stemming from Defendants' policy and practice of issuing and collecting fines online in excess of the amounts actually due in connection with traffic-light camera violations. Plaintiff also makes a claim for unjust enrichment.

2.  This class action is brought on behalf of vehicle owners who, from six years prior to the filing of the Complaint in this case through and including the date of judgment (the "Class

Period"), paid NYC for traffic camera violations online through the DOF website and/or the DOF mobile app with an improperly applied $25.00 late fee in addition to the fine for the traffic violation. Such payments through the DOF website or the DOF mobile app will be referred to hereafter as simply "online" payments.

3. Defendants improperly apply a $25.00 late fee to the statutory $50.00 fine for those vehicle owners who pay their fines online by calculating the 30-day deadline to pay the fine from the date of the violation (or some other date earlier than the date of the Notice of Liability sent to the vehicle owner), as opposed to the statutorily prescribed date of the Notice of Liability ("NOL").

4. As the violation results from a traffic-light camera system that does not notify the driver at the time of the incident that they may have committed a traffic violation, the motorist has no way of knowing they may be subject to a fine until receiving the NOL.

5. As a result, when motorists wishing to plead guilty and simply pay the $50.00 traffic fine attempt to do so online, an additional $25.00 late fee is applied for failure to pay within 30 days of the violation. However, the statutes only allow for a late fee to be applied to traffic-light camera violations for failure to pay within 30 days of the Notice of Liability. Nevertheless, when a motorist attempts to pay the fine within 30 days of the Notice of Liability, but after 30 days have elapsed from the date of the violation, Defendants' online payment system automatically and improperly includes a $25.00 late fee.

6. The imposition of this late fee, calculated from a date earlier than the date of the NOL, is an unauthorized and unconstitutional attempt to expand driver liability beyond the limits set forth by state and local law. Accordingly, Plaintiff seeks a declaratory judgment that the $25.00 late fees calculated from a date earlier than the NOL are unconstitutional, ultra vires and void, and an injunction requiring Defendant to cease its improper collection of late fees and disgorge the

profits from the improperly collected fees. Plaintiff also alleges that, by charging the fee, Defendants were unjustly enriched.

## II.    JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Jurisdiction under CAFA is met because the proposed number of putative class members exceeds 100, at least one plaintiff and one defendant are citizens of different states, and the amount of controversy, including but not limited to the aggregate amount of relief sought by absent class members, exclusive of interest and costs, exceeds $5 million.

8. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the federal claims that they form part of the same case or controversy.

9. Plaintiffs' claims for declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) a substantial amount of the acts and transactions giving rise to this action occurred in this District; (ii) Defendants are authorized to operate and exercise governmental authority in this District and have intentionally availed themselves of the laws within this District and (iii) Defendants currently operate and exercise governmental authority in this District.

11. No other forum would be more convenient for the parties and witnesses to litigate this action.

## III.    PARTIES

12. Plaintiff Louis Russo is a citizen of the State of New York and a resident of Bronx County. Plaintiff holds a valid New York State driver's license and is authorized to operate a motor

vehicle in this District and throughout the State of New York.

13. Defendant New York City is a municipal corporation duly organized and existing under the laws of the State of New York, exercising governmental authority. At all relevant times to this action, Defendant NYC exercised governmental authority in this District.

14. Defendant New York City Department of Finance is a local government agency, bureau, department and/or subdivision of New York City, exercising governmental authority. DOF is the revenue service, taxation agency and recorder of deeds of the government of NYC, as well as the department that adjudicates parking and certain traffic violations and collects the associated fines.

15. Defendant Commissioner Jiha is the commissioner of the DOF and has held that position since 2014. Jiha is responsible for leading the DOF which collects more than $40 billion annually in revenue for the city.

16. Defendant Chief Information Officer Eusebio Formoso is the information technology executive of the DOF. Formoso is responsible for overseeing the Finance Information Technology organization, which provides support for all facets of the agency's computer systems, applications, data security, and network infrastructure.

### IV. FACTUAL ALLEGATIONS

**A.  An Overview of New York City's Traffic Camera Enforcement Systems**

17. Defendant NYC utilizes specialized camera systems to regulate and enforce two types of specific traffic violations: failure to stop at a red light and driving at a speed of more than ten miles per hour above the posted speed limit in a school speed zone.[1]

18. In 1988, the New York State Legislature enacted Vehicle and Traffic Law § 1111-

---

[1] A school speed zone is defined as a distance not to exceed 1,320 feet from a school building, entrance, or exit. VTL § 1180-b (c)(4).

4

a, granting New York City the authority to demonstrate the effectiveness of traffic control signal photo violation monitoring systems for the purposes of enforcing failures to stop at red lights ("Red-Light Camera Violations"). NYC launched the first Red Light Camera program in the nation in 1994.

19. In 2013, the New York State Legislature enacted Vehicle and Traffic Law § 1180-b, granting NYC the authority to initiate an automated speed enforcement program in 20 school speed zones. The first violation pursuant to VTL § 1180-b ("Speed Camera Violation") in NYC was issued in January 2014. In June 2014, the program was expanded to 140 school speed zones.

20. These specialized camera systems capture instances of alleged violations by automatically taking photographs and/or videos of cars at the time when the alleged violation occurs.

21. Owners of vehicles are liable for a violation of VTL § 1111-a when a traffic-control signal photo violation-monitoring system captures evidence of a vehicle failing to properly stop at a red light. The evidence, in the form of photographs, microphotographs, videotape or other recorded images, is inspected by a technician employed by the city and certified as a violation. VTL § 1111-a (b)-(d).

22. Owners of vehicles are liable for a violation of VTL § 1180-b when a photo speed violation monitoring system captures evidence of a vehicle traveling at a speed of more than ten miles per hour about the posted speed limit in effect within a school speed zone. The evidence, in the form of photographs, microphotographs, videotape or other recorded images, is inspected by a technician employed by the city and certified as a violation. VTL § 1180-b (b), (d).

23. These photographs and/or videos of the alleged violations are later reviewed by technicians at the NYC Department of Transportation ("DOT"), who are trained to inspect images

captured by the traffic cameras. The technicians certify when the images confirm a vehicle was observed committing the associated violation and the DOF issues a NOL to the owner of the vehicle.

24. Upon certification of a violation of VTL § 1111-a by a technician, a NOL is generated and sent to the owner of the vehicle by first class mail, containing information about the violation including the date and time of the violation, the location of where the violation took place and was captured by the traffic-control signal photo violation-monitoring system, and the amount of the fine. VTL § 1111-a (g).

25. The Red-Light Camera Violation NOL also explains that the violation is for failing to stop for a red light and includes images of the violation captured by the camera system.

26. The recipient of a Red-Light Camera Violation NOL may plead guilty to the alleged violation and pay the prescribed fine to the DOF by mail, through the DOF's website, using the DOF's mobile app, or in-person at one of five DOF Business Centers.

27. Section 1111-a (e) specifically sets forth the liability that can be imposed on drivers for red light camera violations, limited to $50 per violation with "an additional penalty not in excess of twenty-five dollars for each violation for the failure to respond to a **notice of liability** within the prescribed time period." VTL § 1111-a (e) (emphasis added). This same language appears in NYC Admin. Code § 19-210(f).

28. The NOL for a violation of VTL § 1111-a clearly states that the $50 fine "**is due within 30 days of the date of this notice (NOL).**" *See* Ex. A (Sample Red Light Camera Violation NOL) (emphasis in original).

29. Notwithstanding the clear statutory language and the language contained on the NOL issued for Red-Light Camera Violations, vehicle owners who attempt to pay the $50 fine

6

online during the time period within 30 days of the NOL but more than 30 days after the actual violation (or some other earlier date than the NOL) are improperly charged the additional $25 late fee.

30. Upon certification of a violation of VTL § 1180-b by a technician, a NOL is generated and sent to the owner of the vehicle by first class mail, containing information about the violation including the date and time of the violation, the location of where the violation took place and was captured by the photo speed violation monitoring system, the posted speed limit at the location, the observed speed of the vehicle, and the amount of the fine.

31. The NOL also explains that the violation is for traveling at a speed of more than ten miles per hour above the posted speed limit in effect within the school speed zone and includes images of the violation captured by the camera system.

32. The recipient of a Speed Camera Violation NOL may plead guilty to the alleged violation and pay the prescribed fine to the DOF by mail, through the DOF's website, using the DOF mobile app, or in-person at one of five DOF Business Centers.

33. Section 1180-b (e) specifically sets forth the liability that can be imposed on drivers for speed camera violations, limited to $50 per violation with "an additional penalty not in excess of twenty-five dollars for each violation for the failure to respond to a **notice of liability** within the prescribed time period." VTL § 1180-b (e) (emphasis added).

34. The NOL for a violation of VTL § 1180-b ("Speed Camera Violation") clearly states that the $50 fine "**is due within 30 days of the date of this Notice of Liability (NOL).**" *See* Ex. B (Sample Speed Camera Violation NOL) (emphasis in original).

35. Notwithstanding the clear statutory language and the language contained on the NOL issued for Speed Camera Violations, vehicle owners who attempt to pay the $50 fine online

7

during the time period within 30 days of the NOL but more than 30 days after the actual violation are improperly charged the additional $25 late fee.

36. According to publicly available DOF data, the Red-Light and Speed Cameras have resulted in millions of NOLs in the six fiscal years prior to the filing of this action, which approximately encompasses the Class Period:

<u>Fiscal Year 2020</u>

Total Speed Camera Violations: 3,809,496
Total Red-Light Camera Violations: 363,537

<u>Fiscal Year 2019</u>

Total Speed Camera Violations: 1,098,298
Total Red-Light Camera Violations: 471,759

<u>Fiscal Year 2018</u>

Total Speed Camera Violations: 1,132,367
Total Red-Light Camera Violations: 499,062

<u>Fiscal Year 2017</u>

Total Speed Camera Violations: 1,400,614
Total Red-Light Camera Violations: 516,395

<u>Fiscal Year 2016</u>

Total Speed Camera Violations: 1,253,512
Total Red-Light Violations: 492,478

<u>Fiscal Year 2015</u>

Total Speed Camera Violations: 839,197
Total Red-Light Violations: 719,753

37. According to a report published by NYC's Department of Transportation ("DOT") in 2018, since the inception of the Red Light Camera program in 1994, approximately 2% of vehicle owners receiving NOLs for a Red-Light Camera Violation requested a hearing to challenge

any part of the NOL.[2] Nearly all vehicle owners who receive a Red-Light Camera Violation NOL simply pay the associated fines.

38. As of 2018, since its inception in 1994, NYC's Red-Light Camera Program has generated $532,643,413 in total revenue and $286,783,152 in net revenue after expenses, including program costs, capital costs and staffing costs at both DOF and DOT.

39. According to a report published by NYC's DOT in 2018, since the inception of the Speed Camera program in 2014, only 2.8% of vehicle owners receiving NOLs for a Speed Camera Violation requested a hearing to challenge any part of the NOL.[3] Nearly all vehicle owners who receive a Speed Camera Violation NOL simply pay the associated fines.

40. As of 2018, since its inception in 2014, NYC's Speed Camera Program has generated $183,450,718 in total revenue and $83,755,850 in net revenue after expenses, including operating costs and capital costs.

41. Upon information and belief, NYC has received considerable revenue from improperly applied late fees collected by the DOF for traffic camera violations.

42. Upon information and belief, these improperly assessed late fees are part of the normal policy and procedure of the DOF, which are automatically applied to traffic camera violations when a vehicle owner attempts to pay the associated fines online or on the DOF mobile app within 30 days of the issue date of a NOL but after 30 days from the date of the alleged violation that resulted in the NOL, or some other date earlier than the NOL.

43. Upon information and belief, thousands of NOLs were issued, throughout the Class

---

[2] New York City Department of Transportation, "Red Light Camera Program, Program Review 1994-2017," available at: https://www1.nyc.gov/html/dot/downloads/pdf/nyc-red-light-camera-program.pdf
[3] New York City Department of Transportation, "Automated Speed Enforcement Program Report 2014-2017," available at: http://www.nyc.gov/html/dot/downloads/pdf/speed-camera-report-june2018.pdf

9

Period, to vehicle owners residing in states outside of New York. It is reasonable to infer that at least one member of the Class is a resident of a state other than New York.

44. Defendant Jiha, as Commissioner of the DOF, is responsible for leading the department and ensuring its policies and procedures are in accordance with applicable statutes and/or regulations. Jiha failed to implement, establish, create, oversee, monitor, audit and/or assess the NOL online payment system to ensure late fees for traffic camera violations were properly calculated and applied.

45. Defendant Formoso, as Chief Information Officer of the DOF, is responsible for overseeing all facets of the DOF computer systems and network infrastructure. Upon information and belief, this includes the online payment system for NOLs associated with traffic camera violations. Formoso failed to implement, establish, create, oversee, monitor, audit and/or assess the NOL online payment system to ensure late fees for traffic camera violations were properly calculated and applied.

**B.    Factual Allegations Regarding Plaintiff's Experience**

46. In late September 2019, Plaintiff Russo received two NOLs for alleged Speed Camera Violations that were captured by a camera system located at Utopia Parkway and 17th Avenue in Queens County, New York.

47. The first NOL listed a violation date of August 14, 2019 with a violation number of 4662871219.

48. The second NOL listed a violation date of August 15, 2019 with a violation number of 4662817031.

49. Both NOLs were dated as being issued on or about September 27, 2019, listing a due date to plead guilty and pay the $50.00 fine without any additional penalty or late fee within

30 days from the NOL issue date. Therefore, Plaintiff had until on or about October 28, 2019 to pay the $50.00 fines with no further penalty.

50. On or about October 15, 2019, Plaintiff attempted to make an online payment to timely pay the $50.00 fines associated with the NOLs.

51. Upon entering the violation numbers for the NOLs, the DOF online payment system indicated that an additional $25.00 late fee had been applied to both violations, despite the NOLs he received stating he had until on or about October 28, 2019 to pay without penalty.

52. Plaintiff contacted 311, the information system for NYC, and explained that he attempted to pay the fines associated with the NOLs he received, but that late fees were being applied before the deadline of 30 days following the NOL issue date. The 311 representative who spoke to Plaintiff said the late fees were properly applied because 30 days had elapsed since the date of the alleged violation in August.

53. This was incorrect information and in contradiction to the applicable statutes and/or regulations regarding these traffic camera systems.

54. Plaintiff received NOLs that were issued on or about September 27, 2019, which was already 44 days and 43 days after the dates of the alleged violations on August 14 and August 15. Even if the law required payment within 30 days of the violation, which it does not, it would have been impossible for Plaintiff to pay the fines within that time frame, as he was unaware there was an alleged violation until he received the NOLs.

55. Plaintiff elected to request a hearing to dispute the late fee for both NOLs online. In order to request a hearing, he had to pay the fines in full, including the improperly applied late fees.

56. Plaintiff entered the relevant information into the DOF website, explaining the issue

with the improperly applied late fees, which were apparently being calculated from the date of the violation as opposed to the issue date of the NOL.

57. The result of the hearing was completely arbitrary and resulted in inconsistent determinations. The late fee for the August 14, 2019 violation was deemed valid, while the late fee for the August 15, 2019 violation was removed, leaving only the $50.00 fine. Plaintiff paid the $50.00 fine for the August 15, 2019 violation. Plaintiff paid the $50.00 fine and the improperly applied $25.00 late fee for the August 14, 2019 violation.

58. As the determination of the hearing was arbitrary and inconsistent despite clear evidence of the error, attempting to appeal the hearing determination would have been fruitless.

59. The improperly calculated and applied late fees were the result of DOF policies and/or procedures and resulted in the imposition of a fine or fee without reasonable cause.

60. As Plaintiff attempted to pay the fine for the violation online, the improper application of a late fee before the end of the 30-day period following the date of the NOL was, necessarily, an automated process of the DOF's online payment system.

61. Based on his experience, it is reasonable to assume that the DOF's online payment system has improperly applied the $25 late fee on potentially tens of thousands of other vehicle owners who attempted to pay the fines associated with their traffic light camera violations through DOF's online payment system.

62. The online payment system operated by Defendants functions in a manner that is not in compliance with the applicable sections of the VTL concerning Red Light and Speed Camera violations, because it imposes the $25 late fee on vehicle owners who attempt to pay within 30 days of the NOL.

63. The condition giving rise to Plaintiff's complaint was entirely created by and under

the direct control of Defendants. Defendants, therefore, knew or should have known of this problem and corrected it.

64. Plaintiff has complied with all conditions precedent to bringing this action, to the extent any apply. At least 30 days have elapsed since a notice of claim pursuant to NYC Admin. Code § 7-201 was served on the New York City Comptroller. The Comptroller neglected or refused to make an adjustment or payment for Plaintiff's claims during the 30 days following service of this notice.

## V.    CLASS ALLEGATIONS

65. The Representative Plaintiff brings this action individually and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All persons who received a NOL for a Red Light Camera or Speed Camera violation during the Class Period and were assessed a $25.00 late fee despite paying the $50.00 fine within 30 days of the issue date of the NOL.

66. Excluded from the Class are Defendants, their government agencies, officers, directors, agents, employees, counsel and its subsidiaries and affiliates; Class Counsel, employees of Class Counsel's firm and associated law firm, and Class Counsel's immediate family members; the presiding Judge and Magistrate Judge and their immediate family members; and all persons who make a timely election to be excluded from the Class.

67. Plaintiff reserve the right to amend or modify the Class definitions in connection with a motion for Class certification or as warranted by discovery.

68. The members of the Class are so numerous that joinder of all members is impractical. Although the precise number of Class members is only known to Defendants, Plaintiff avers, upon information and belief, that the Class could include hundreds of thousands of members. It is reasonable to assume, based on Plaintiff's experience, the automated nature of the DOF payment system, and the approximately 7.3 million total traffic camera violations in the last three

fiscal years, that there are hundreds of thousands of Class members.

69. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The common questions include whether:

   a. Defendants engaged in the conduct alleged herein;

   b. Defendants routinely applied and collected late fees for traffic camera violations based on a deadline date other than the NOL issue date in violation of VTL § 1111-a, and/or VTL § 1180-b;

   c. Defendants' imposition of the additional $25.00 late fee in the manner described above is *ultra vires*, unconstitutional, or otherwise void;

   d. Defendants' retention of the improperly applied late fees would be unjust or inequitable;

   e. Defendants' conduct was part of a pattern or practice;

   f. Plaintiff and the Class could reasonably have avoided the injury or harm;

   g. Plaintiff and the Class are entitled to equitable relief, including but not limited to, declarative and injunctive relief and restitution; and

   h. Plaintiff and the Class are entitled to actual damages and other monetary relief.

70. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories. Furthermore, Plaintiff and all members of the Class sustained monetary damages including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct.

71. The Representative Plaintiff will fairly and adequately protect the interests of the Class. Representative Plaintiff is committed to vigorously litigating this matter and has retained

counsel who have litigated numerous class action lawsuits including cases involving unlawful business practices claims. Neither Representative Plaintiff nor his counsel have any interests which might keep them from vigorously pursuing the claims or protecting the interests of all Class member

72. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

73. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

74. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is slight because of the sheer number of claims against the Defendants and complexity of the matter.

75. Management of the Class' claims is likely to present significantly fewer difficulties than those presented by massive numbers of individual claims. The identities of the Class members may be obtained from Defendants' records.

## VI.     CAUSES OF ACTION

### COUNT I
### Declaratory and Injunctive Relief

76.     Plaintiff incorporates the paragraphs above as if fully set forth herein.

77.     On behalf of himself and the Class, Plaintiff seeks a declaratory judgment that Defendants' imposition of the $25 late fee to online fine payments made within 30 days of the date of an NOL is unconstitutional and in violation of the applicable section of the VTL.

78.     New York's VTL § 1111-a (e) sets forth the liability that can be imposed on vehicle owners for Red Light Camera Violations, limited to $50 per violation with "an additional penalty not in excess of twenty-five dollars for each violation for the **failure to respond to a notice of liability within the prescribed time period**." VTL § 1111-a (e) (emphasis added). This same language appears in NYC Admin. Code § 19-210(f).

79.     Red Light Camera Violation NOLs clearly state that for a violation of VTL § 1111-a, the $50 fine "**is due within 30 days of the date of this notice (NOL).**"

80.     New York's § 1180-b (e) sets forth the liability that can be imposed on vehicle owners for Speed Camera Violations, limited to $50 per violation with "an additional penalty not in excess of twenty-five dollars for each violation for the **failure to respond to a notice of liability within the prescribed time period**." VTL § 1180-b (e) (emphasis added).

81.     Speed Camera Violation NOLs clearly state that for a violation of VTL § 1180-b, the $50 fine "**is due within 30 days of the date of this Notice of Liability (NOL).**"

82.     The imposition of the $25 late fee to online payments made within 30 days of the date of a NOL is inconsistent with the applicable sections of the VTL, is *ultra vires*, unconstitutional, or void as a matter of law.

83.     Plaintiff seeks injunctive relief prohibiting Defendants from continuing to

improperly assess the $25 late fee to online payments made within 30 days of Red Light Camera Violation NOLS and/or Speed Light Camera Violation NOLs.

84. Plaintiff, on behalf of himself and the Class, also seeks retrospective injunctive relief requiring Defendants to disgorge all improperly assessed late fees under the Red Light Camera Violation and/or Speed Light Camera Violation programs.

## COUNT II
### Unjust Enrichment

85. Plaintiff incorporates the paragraphs above as if fully set forth herein.

86. Plaintiff alleges that Defendants' retention of the improperly assessed $25 late fees constituted unjust enrichment.

87. By paying Defendants the $25 late fees, Plaintiff and the Class benefited Defendants at their own expense.

88. As the improperly assessed $25 late fees constituted an attempt by Defendant to raise revenue through unauthorized, *ultra vires*, and/or unconstitutional means, equity and good conscience requires restitution of the fees to Plaintiff and the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on behalf of himself and the proposed Class providing such relief as follows:

A. Certification of the Class proposed herein under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff as Class representative; and appointment of the undersigned counsel as counsel for the Class;

B. A declaration that Defendants are financially responsible for notifying members of the Class of the pendency of this suit;

C. A declaration that the improperly assessed late fees under the Red Light Camera

17

Violation and/or Speed Light Camera Violation programs are unconstitutional, *ultra vires*, unauthorized, void or otherwise illegal;

  D. An order permanently enjoining and restraining Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, from in any manner continuing, maintaining, or imposing the improperly assessed $25 late fees in connection with the Red Light Camera Violation and Speed Light Camera Violation programs, or from adopting or following any practice, plan, program, or device having a similar purpose or effect;

  E. An order requiring Defendants to disgorge all sums collected via the improperly assessed $25 late fees and pay restitution of such fees to Plaintiff and Class Members;

  F. Costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and pre- and post-judgment interest at the maximum rate allowable by law; and

  G. Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff and the Class members hereby demand a trial by jury.

DATED: September 17, 2020    *s/ Adam Deutsch*
                **FIEDLER DEUTSCH, LLP**
                Adam E. Deutsch
                81 Main Street, Suite 304
                White Plains, NY 10601
                Tel. (914) 993-0393
                Fax. (914) 993-0394
                adeutsch@fiedlerdeutsch.com

                **Lewis Saul & Associates, P.C.**
                Lewis J. Saul (*pro hac vice forthcoming*)
                Edward A. Coleman (*pro hac vice forthcoming*)

29 Howard Street, 3rd Floor
New York, NY 10013
T: (212) 376-8450
F: (212) 376-8447
lsaul@lewissaul.com
ecoleman@lewissaul.com

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis (*pro hac vice forthcoming*)
Lauren K.W. Brennan (*pro hac vice forthcoming*)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel. (215) 735-8600
Fax. (215) 950-8000
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com